## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KORI COLE,
c/o National Student Legal Defense
Network
1015 15th Street NW, Suite 600,
Washington DC 20005,

on behalf of herself and all others
    similarly situated,

        *Plaintiff,*

    vs.

STEVEN MNUCHIN, in his
    official capacity as United States
    Secretary of Treasury,
1500 Pennsylvania Avenue NW
Washington, DC 20220,

UNITED STATES DEPARTMENT OF
TREASURY,
1500 Pennsylvania Avenue NW
Washington, DC 20220,

ELISABETH DEVOS, in her official
    capacity as United States Secretary
    of Education,
400 Maryland Avenue SW
Washington, DC 20202,

      and

UNITED STATES DEPARTMENT OF
EDUCATION,
400 Maryland Avenue SW
Washington, DC 20202,

        *Defendants*

Case No. 20-cv-1423

**CLASS ACTION
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## INTRODUCTION

1.     Even before the COVID-19 pandemic, many student loan borrowers who defaulted on their student loans were in financial distress. The economic fallout from the pandemic has had a significant and harmful impact on those defaulted student loan borrowers, making their financial situations even more precarious. Recognizing the vulnerability and needs of such borrowers, Congress passed, and the President signed, emergency legislation known as the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") that suspended student loan obligations, including the practice of collecting student loan debt by offsetting tax refunds. Despite this unambiguous statutory relief, many such borrowers continue to be subjected to debt collection by Defendants United States Department of Treasury and Secretary of Treasury Steven Mnuchin (collectively, "Treasury"), and Defendants United States Department of Education and Secretary of Education Elisabeth DeVos (collectively, "ED").

2.     Decades ago, Congress vested ED with the extrajudicial authority to offset the federal tax refunds of individuals who default on their federally issued or guaranteed student loans. Similarly, state tax refunds of individuals who default on their federally issued or guaranteed student loans can be offset, pursuant to reciprocal agreements between individual states and Treasury.

3.     On March 25, 2020, during a period of rapid response to the spread of COVID-19, ED announced that it had "stopped all requests to the U.S. Treasury to

withhold money from defaulted borrowers' federal income tax refunds."[1] Further, it announced that it would issue refunds of "offsets that were in the process of being withheld on March 13, 2020, the date President Donald Trump declared a national emergency."[2]

4.    On March 27, 2020, the CARES Act was passed by Congress and signed into law by President Trump. *See* Pub. L. No. 116–136, 134 Stat. 281 (2020). In doing so, Congress and the President acknowledged that offsetting tax refunds of defaulted student loan borrowers must stop during the present crisis. As such, the law directs the Secretary of Education to suspend "all involuntary collection related to" student loans, including through "reduction[s] of tax refund[s]" by Treasury, until September 30, 2020. *Id.* § 3513(e).

5.    In order to offset a defaulted student loan borrower's federal tax refund, ED sends a certification to Treasury, which Treasury uses to offset any federal tax refund to which the borrower may be entitled. If Treasury has a reciprocal agreement with a state, Treasury also notifies that state of the certification so the state can offset any state tax refund to which the borrower may be entitled.

---

[1] Press Release, U.S. Dep't of Educ., *Secretary DeVos Directs FSA to Stop Wage Garnishment, Collections Actions for Student Loan Borrowers, Will Refund More than $1.8 Billion to Students, Families* (Mar. 25, 2020), https://www.ed.gov/news/press-releases/secretary-devos-directs-fsa-stop-wage-garnishment-collections-actions-student-loan-borrowers-will-refund-more-18-billion-students-families ("DeVos Release").

[2] *Id.*

6.     Despite ED's announcement that it would stop offsetting tax refunds and the unambiguous requirements of the CARES Act, ED and Treasury have continued to offset tax refunds. ED and Treasury illegally offset Named Plaintiff Kori Cole's federal tax refund to collect on a student loan and, to date, have not returned the money that is owed. They have similarly failed to return money to thousands of putative class members. These actions violate the CARES Act, the Administrative Procedure Act ("APA"), and the statutes and regulations that authorize federal agencies to offset tax refunds.

7.     Ms. Cole's husband owns a custom woodworking business and earns approximately $50,000 per year, which is their family's sole source of income. The woodworking business suffered as a result of the COVID-19 pandemic, and produced almost no income for six to eight weeks earlier this year. Following the passage of the CARES Act, Ms. Cole and her husband expected to receive a federal tax refund of $6,859 and planned to use it to help pay living expenses for their family of four. However, their federal tax refund was offset in full to pay Ms. Cole's defaulted student loans, in violation of the CARES Act. As a result, Ms. Cole and her family are behind on their rent and bills.

8.     The CARES Act's reprieve from offsetting tax refunds was supposed to provide financial relief to Ms. Cole and others like her during the pandemic. Ms. Cole brings this lawsuit on behalf of herself and other similarly situated borrowers to force the Departments to comply immediately with the CARES Act directive

requiring them to suspend their practice of offsetting tax refunds for defaulted student borrowers and to promptly return the amounts illegally seized.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. The Court also has the authority to order a remedy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

10.     Because this is an action against officers and agencies of the United States, venue is proper in this district pursuant to 28 U.S.C. § 1391(e). Venue is also proper in this district because Secretary Mnuchin and Secretary DeVos perform their official duties here. Finally, many of the events giving rise to this action took place here.

## PARTIES

11.     Named Plaintiff Kori Cole is a natural person who resides in Arvada, CO. Her husband owns a custom woodworking business, which is their family's sole source of income. The business has been significantly affected by the economic slowdown caused by the COVID-19 pandemic. Ms. Cole is a federal student loan borrower with federally-held loans subject to the CARES Act. She received a notice dated April 8, 2020, stating that the entire federal tax refund owed to her and her husband was taken to pay her delinquent student debt.

12.     Defendant Steven Mnuchin is sued in his official capacity as the Secretary of Treasury for the United States Department of Treasury.

13.     Defendant United States Department of Treasury is a department of the executive branch of the United States government headquartered in Washington, DC and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).

14.     Defendant Elisabeth DeVos is sued in her official capacity as the Secretary of Education for the United States Department of Education.

15.     Defendant United States Department of Education is a department of the executive branch of the United States government headquartered in Washington, DC and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL ALLEGATIONS

**The Departments' authority to offset federal tax refunds**

16.     Title IV of the Higher Education Act of 1965 (as amended) ("HEA"), 20 U.S.C. § 1070 *et seq.*, governs the administration of the federal student loan program.

17.     As part of its management of the federal student loan program, ED possesses extensive extrajudicial collection powers, including the authority, following default on a student loan borrower's debt, to offset the borrower's federal tax refund without a court order. The Debt Collection Improvement Act ("DCIA") authorizes this practice. 31 U.S.C. § 3720A. *See also* 26 U.S.C. § 6402(d).

18.     Pursuant to the DCIA, ED relies on Treasury's Bureau of the Fiscal Service ("Fiscal Service") to effectuate offsets in order to secure payment for debts owed.

19.     When a borrower defaults on a student loan, ED works with Fiscal Service through the Treasury Offset Program ("TOP"), a debt collection program that is fully automated and computerized, to offset the borrower's federal tax refund. *See* Declaration of Jennifer L. Plant ("Plant Decl.") ¶ 4, *Williams v. King*, No. 16-cv-11949 (D. Mass. Jan. 6, 2017) (Dkt. 19-1) (attached as Exh. A).[3]

20.     Before submitting a debt to Fiscal Service for collection, ED must first notify the defaulted borrower of its intent to offset the borrower's federal tax refund. 31 U.S.C. § 3720A(b)(1); 31 C.F.R. § 285.2(d)(1)(ii)(B); 34 C.F.R. § 30.33(b). *See also* Plant Decl. ¶ 4(a).

21.     Once ED has provided this notice, it must then certify to Treasury that the debts it submits to Fiscal Service for offset are valid and legally enforceable for purposes of the offset, including a certification that the debt is due, in the amount stated, with no legal bars to collection, and that ED has met all due process requirements applicable to the debt it seeks to collect through offset. 31 U.S.C. § 3720A(b); 31 C.F.R. § 285.2(d)(1)(i); *id.* § 285.5(b), (d)(3). *See also* Plant Decl. ¶ 4(b).

22.     For purposes of collecting debts by offset, a debt is "legally enforceable" if there has been a "final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset." 31 C.F.R. § 285.5(b).

---

[3] In 2016, a lawsuit was brought by two former students of Corinthian College against then-Secretary of Education John B. King, Jr., and then-Secretary of the Treasury, Jacob J. Lew, regarding the legal enforceability of their student loans. First Amended Complaint, *Williams v. King*, No. 16-cv-11949 (D. Mass. Oct. 14, 2016) (Dkt. 5). In defending the lawsuit, Treasury filed a declaration by Jennifer Plant, a Financial Program Specialist with Treasury's Fiscal Service, that explained how the Fiscal Service operated TOP. *See generally* Plant Decl.

Likewise, a debt is *not* legally enforceable if, *inter alia*, it is "covered by a statute that prohibits collection of such debt by offset." *Id.*

23.     When submitting a debt for offset, ED must also submit to Fiscal Service the debtor's name, address, taxpayer identifying number ("TIN"), and balance due on the debt. 34 C.F.R. § 285.5(d)(5). *See also* Plant Decl. ¶ 4(a).

24.     Treasury accepts the notice from ED that a debtor owes a "past-due legally enforceable debt," and offsets the debtor's federal tax refund, pays the amount offset to ED, and notifies the debtor of the offset. 26 U.S.C. § 6402(d)(1). *See also* 31 U.S.C.§ 3720A(c).

25.     Fiscal Service has the authority to reject a certification that is not submitted in the proper form or lacks required information. 31 C.F.R. § 285.2(d)(5).

26.     Federal payment agencies, such as the Internal Revenue Service, make payments—such as federal tax refunds—by submitting certified payment vouchers to Fiscal Service or other disbursing agencies. The payment agency certifies various pieces of information, including the name and TIN of the person or entity legally entitled to the payment, the amount of the payment, and where the payment should be directed. *See* Plant Decl. ¶ 4(c).

27.     As part of the disbursement process, Fiscal Service, using TOP, compares the names and TINs on the payment vouchers with the names and TINs associated with debts in the TOP debt database. If the name and TIN of a payee match the name and TIN of a debtor, TOP automatically reduces the debtor's federal tax refund up to the amount of the debt. 31 U.S.C. § 3720A(c); 31 C.F.R. §

285.5(c)(2). At the time of the offset, Fiscal Service, using TOP, reduces the balance of the debt by the amount of the offset. Plant Decl. ¶ 4(d).

28.     After the offset occurs, Fiscal Service sends a notice to the debtor that the debtor's federal tax refund has been offset. 31 C.F.R. § 285.2(e). After that, the information about the offset is transmitted to ED for the purpose of ensuring that the money was properly applied to the debt balance on shown on ED's books. Plant Decl. ¶ 4(e).

29.     ED is required to notify Fiscal Service when the debt is no longer legally enforceable. 31 C.F.R. § 285.5(d)(10)(iv); *id.* § 285.2(d)(4). *See also* Plant Decl. ¶ 4(f).

**The Departments' authority to offset state tax refunds**

30.     Student loan debt owed to ED can also be involuntarily collected without a court order through the offset of a defaulted student borrower's state tax refund, if the state has a reciprocal agreement with the federal government. 31 U.S.C. § 3716(h)(1)(B); 31 U.S.C. § 285.6(c), (d)(2).

31.     As of fiscal year 2019, forty-one states and the District of Columbia had reciprocal agreements with the federal government to offset state income tax refunds to pay debts owed to the federal government.[4]

---

[4] U.S. Dep't of Treasury, Treasury Offset Program: State Programs – Participation, https://www.transparency.treasury.gov/dataset/treasury-offset-program/state-programs-participation (last visited on May 26, 2020).

32.     As a result of those agreements, in fiscal year 2019 the federal government received a total of $493.2 million offset from state tax refunds to pay debts owed to the federal government.[5]

33.     Each state's reciprocal agreement specifies the requirements for Fiscal Service to follow when submitting a federal debt for collection by state payment offset. 31 C.F.R. § 285.6(j)(1).

34.     To offset a defaulted student borrower's state tax refund to pay defaulted federal student loan debt, Fiscal Service submits to the state that the debt has been certified by ED to be "delinquent, valid, and legally enforceable in the amount stated," and that ED has provided the borrower with the required notice. 31 C.F.R. § 285.6(j)(2). *See also* 31 U.S.C. § 3716(a).

35.     The state agency then offsets the state payment pursuant to state laws and regulations. 31 C.F.R. § 285.6(k)(1).

36.     After the offset occurs, the state agency sends a notice to the borrower that the state tax refund has been offset. 31 C.F.R. § 285.6(k)(3).

37.     The debt remains subject to collection by the state agency for offset until it is withdrawn by Fiscal Service, provided the debt remains past due and legally enforceable. 31 C.F.R. § 285.6(l).

---

[5] *Id.*

**The CARES Act requires immediate suspension of offsetting tax refunds and notice of the suspension to borrowers.**

38.     On March 13, 2020, President Trump declared a national emergency due to the COVID-19 pandemic. At that time, according to ED, the Departments were processing approximately $1.8 billion in student loan offsets, from more than 830,000 borrowers.[6] Secretary DeVos directed ED to return this money, and also noted that "[ED] expects the number of borrowers who will benefit from this relief to increase as servicers work through additional offsets in the queue at the time of this announcement."[7]

39.     On March 25, 2020, ED announced that, due to the national emergency, it "ha[d] stopped all requests to the U.S. Treasury to withhold money from defaulted borrowers' federal income tax refunds."[8]

40.     After the CARES Act passed by a vote of 96–0 in the United States Senate, and by a voice vote in the United States House of Representatives, President Trump signed it into law on March 27, 2020. The purpose of the CARES Act is to "[p]rovid[e] emergency assistance and health care response for individuals, families[,] and businesses affected by the 2020 coronavirus pandemic." CARES Act, H.R. 748, 116th Cong. (2020); *see also* CARES Act, S. 3548, 116th Cong. (2020).

41.     Prior to and after its passage, legislators from both parties came together to emphasize that the relief provided under the Act must be provided

---

[6] DeVos Release.

[7] *Id.*

[8] *Id.*

immediately. For example, Senator McConnell explained that the CARES Act "puts urgently-needed cash in the hands of American workers and families. . . . That is what we have to do: Inject a significant amount of money as quickly as possible into households, small businesses, key sectors, and our nation's hospitals and health centers. This bill would do just that—and do it fast."[9]

42. In an effort to protect financially vulnerable borrowers from mounting financial burdens during the COVID-19 crisis, Section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collections of defaulted Direct Loans and Federal Family Education Loans ("FFEL")[10] owned by ED. Section 3513 of the Act specifically and explicitly includes

---

[9] Press Release, Office of Sen. Mitch McConnell, *McConnell: "This is Not a Political Opportunity. It is a National Emergency* (Mar. 22, 2020), https://www.mcconnell.senate.gov/public/index.cfm/pressreleases?ContentRecord_id=16D7E2DB-8860-4B80-A9F3-6E6858BF625D. *See also* Letter from Offices of Sen. Cory A. Booker, Hon. Ayanna Pressley, *et al.*, to Secretary Mnuchin and Secretary DeVos (Apr. 16, 2020), ("Congress passed the CARES Act in an effort to provide some immediate relief to our most vulnerable workers and families."), https://pressley.house.gov/sites/pressley.house.gov/files/Bicameral%20AWG%20Letter%20Booker%20Pressley_ARC%20copy.pdf; 166 Cong. Rec. S1977 (daily ed. Mar. 24, 2020) (statement of Sen. John Thune) ("[The CARES Act] is filled with resources to help struggling families, provide relief to workers, and enable businesses to retain their employees during this crisis. Americans need this bill today, not tomorrow, [and] not next week[.]"); Press Release, Office of Sen. Chuck Grassley, *Grassley Releases Tax, Unemployment Insurance & Health Policy Legislation to Combat Impact of Coronavirus* (Mar. 25, 2020), https://www.grassley.senate.gov/news/news-releases/grassley-releases-phase-3-coronavirus-response-legislation ("The economic and public health crisis we are experiencing as a country is an emergency and Congress must respond in kind. Congress must pass this legislation immediately.").

[10] Direct and FFEL loans are two types of federal student loans. As part of the HEA, Congress established the FFEL loan program in which commercial lenders loaned money to students and their families under favorable terms, which were then

suspension of federal tax refund offsets, and includes state tax refund offsets under

a broad ban on involuntary collection activities :

> (a) IN GENERAL. —The Secretary shall suspend all
> payments due for loans made under part D and part B
> (that are held by the Department of Education) of title IV
> of the Higher Education Act of 1965 (20 U.S.C. 1087a et
> seq.; 1071 et seq.) through September 30, 2020.
> . . .
> (e) SUSPENDING INVOLUNTARY COLLECTION.—
> During the period in which the Secretary suspends
> payments on a loan under subsection (a), the Secretary
> shall suspend all involuntary collection related to the
> loan, including—
> . . .
> (2) a reduction of tax refund by amount of debt authorized
> under section 3720A of title 31, United States Code, or
> section 6402(d) of the Internal Revenue Code of 1986;
> . . .
> (4) any other involuntary collection activity by the
> Secretary.

43.     With this provision, Congress immediately prohibited the collection of

federal student loan debts through tax refund offsets for a six-month period (which

was more than the sixty days previously announced by ED) so that struggling

---

guaranteed by guaranty agencies and reinsured by the United States government.
*See generally* 20 U.S.C. § 1078(a)–(c). Effective in 2010, Congress ceased the
origination of new FFEL loans and transitioned entirely to a Direct Loan program
wherein the United States serves as the lender and contracts with non-
governmental entities to service loans the Department issues. 20 U.S.C. § 1071(d);
*see also* Health Care & Educ. Reconciliation Act of 2010, Pub. L. No. 111–152,
§ 2201 *et seq.*, 124 Stat. 1029, 1074 (2010). Although borrowers are still repaying
FFEL loans, no new FFEL loans have been issued since June 30, 2010. In addition,
in 2008, Congress—through the Ensuring Continued Access to Student Loan Act
("ECASLA"), Pub. L. No. 110–227, 122 Stat. 740—authorized ED to purchase FFEL
loans from commercial lenders for a limited period of time. That period was
subsequently extended. Many of those loans are still owned by ED today.

student loan borrowers would be able to spend their tax refunds during the crisis on essential living expenses, such as food, housing, and medical bills.

44. The CARES Act also requires ED to provide notice to borrowers of the actions taken suspending tax refund offsets on or before April 11, 2020. Section 3513(g)(1)(B) provides that the Secretary shall "not later than 15 days after the date of enactment of this Act, notify borrowers—. . . (B) of the actions taken in accordance with subsection (e) for whom collections have been suspended."

45. On or around April 1, 2020, ED placed the following guidance to borrowers on its website:

> **On March 25, 2020, ED announced that my federal tax refund would not be withheld to repay my defaulted federal student loan debt. My refund has already been taken. Will I get it back?**
>
> Yes, but only if your federal tax refund was in the process of being withheld—on or after March 13, 2020, and before September 30, 2020—for the repayment of a defaulted federal student loan.
>
> Your federal tax refund will not be returned to you if the process to withhold your refund was completed before March 13, 2020.

*See* U.S. Dep't of Educ., Coronavirus and Forbearance Info for Students, Borrowers, and Parents, https://studentaid.gov/announcements-events/coronavirus (last visited May 26, 2020).

**The Departments' failure to implement the CARES Act**

46. Despite these statements, the Departments have offset, and, on information and belief, will continue to offset, federal tax refunds of student loan borrowers in violation of the CARES Act.

47.     As discussed further below, Defendants subjected Ms. Cole and others like her to federal tax refund offsets for their student loans well after the CARES Act went into effect.

48.     Treasury maintains a TOP "Offset Collections" data website that reports the number and total value of offsets performed for each agency and the type of federal payment the offset was made against.[11] The website appears to show that Treasury offset over $18.8 million from federal tax refunds in the third quarter of this fiscal year (*i.e.*, since April 1, 2020) to disburse to ED, from 11,049 refunds.[12]

49.     Defendants' failure to stop all offsets suggests that one of two things has occurred. Either (1) ED has not notified Fiscal Service that the student loan debts it had previously certified for involuntary collections through the offset of federal tax refunds and that had not been processed before March 27, 2020, are currently unenforceable and must not be collected by offsetting tax refunds; or (2) ED has notified Fiscal Service that the offset of defaulted borrowers' federal tax

---

[11] *See* U.S. Department of Treasury, Treasury Offset Program: Offset Collections – Federal and State Agencies, https://www.transparency.treasury.gov/dataset/treasury-offset-program/offset-collections (last visited May 27, 2020).

[12] These numbers were derived by summing up the disbursements from federal tax refunds to ED's "agency sites." Selecting "Fiscal Year," "FY2020 to FY2020," and "Quarter" will display the total amount disbursed by TOP to other agencies this quarter. Clicking on the bars representing "FY 2020 Q3," then "Federal Non-Tax," then "US Department of Education" will bring up a list of ED agency sites; clicking the bars for each individual office and then clicking the bars representing "TDO" (*i.e.*, Treasury Disbursing Office) will bring up the number and total amount of tax refunds offset and disbursed to each agency site, on both gross and net (i.e., unrefunded) bases. Because Plaintiff has had no discovery in this case, Plaintiff cannot vouch for the accuracy of the numbers that Treasury has reported.

refunds must be suspended, but Fiscal Service has nonetheless continued offsetting federal tax refunds to collect on these debts.

50.     Similarly, the Departments have offset, and may be continuing to offset, state tax refunds of borrowers in violation of the CARES Act. Here again, the Departments have not taken sufficient steps to suspend the offset of state tax refunds as required by the CARES Act. Either ED has not notified Fiscal Service that the student loan debts it had previously certified for involuntary collections through the offset of state tax refunds and that had not been processed before March 27, 2020, are currently unenforceable and must not be collected on; or Treasury has not taken sufficient steps to notify states that these debts are no longer subject to collection and ensure that states stop the process for offsetting state tax refunds to collect on these debts.

51.     The CARES Act did not provide the Departments with a grace period in which to provide this temporary six-month relief. To the contrary—as indicated by the requirement in Section 3513(g)(1)(B) that the Secretary provide notice to borrowers by April 11, 2020, that involuntary collections were suspended—timely action is essential to delivering the relief Congress mandated.

52.     Although the Departments may have ceased the offset of the tax refunds of some student loan borrowers, they have not stopped offsetting the refunds of others, including Ms. Cole and other members of the proposed class, and are therefore in violation of the CARES Act.

53.    The Departments also have not returned to Ms. Cole and other members of the proposed class the amounts taken from their federal tax refunds in violation of the CARES Act.

54.    In addition, Ms. Cole did not receive the notice that the CARES Act required ED to send no later than April 11, 2020, which should have notified her that tax refund offsets would be suspended. *See* CARES Act § 3513(g)(1).

55.    This is not the only instance of ED disregarding the requirements of the CARES Act. Following its passage, ED continued to garnish the wages of tens of thousands of federal student loan borrowers, in violation of the same provision of the CARES Act. Although Section 3513(e) required immediate suspension of such collections, as of May 7, 2020—nearly six weeks after the passage of the Act—ED was still garnishing the wages of approximately 54,000 borrowers. *See* First Joint Status Report at ¶ 2, *Barber v. DeVos*, No. 20-cv-1137 (D.D.C. May 11, 2020) (Dkt. 14).

**Harm to Plaintiff Kori Cole and the Putative Class**

56.    The Departments' offset of federal tax refunds, and their failure to return these funds, is causing material and immediate harm to Ms. Cole and other members of the proposed class, as well as thwarting the purpose of the CARES Act to provide fast, direct relief to student loan borrowers during the current national emergency.

57.    If ED provides full refunds to borrowers months or even weeks into the future, many borrowers will still experience substantial harm. Section 3513 of the CARES Act is designed to provide immediate relief to struggling borrowers for life

17

necessities such as food, rent, and bills. A refund many weeks or months after the offsets takes place cannot erase hardship suffered in the present.

58. Ms. Cole and her family are exactly the types of people Congress intended to help by requiring ED to cease all involuntary collection of defaulted student loan debt.

59. From 2007 to 2009, Plaintiff Kori Cole attended Heritage College, in Lakeside, CO, where she earned an associate's degree and studied to be an x-ray technician and medical assistant. Ms. Cole took out federally held student loans to attend college. She currently owes over $23,000 on those loans.

60. Ms. Cole's husband owns a custom woodworking business and earns approximately $50,000 a year. The money that Ms. Cole's husband earns is the sole source of income for their family of four.

61. Ms. Cole's husband's woodworking business was financially impacted by the COVID-19 pandemic. The business did not make any sales for approximately six to eight weeks, and jobs were put on hold.

62. Late on March 27, 2020, after the passage of the CARES Act, Ms. Cole and her husband filed their federal tax returns.

63. Ms. Cole and her family counted on the federal tax refund not being offset due to the debt she owes on her student loans, as the CARES Act requires.

64. Ms. Cole did not receive a notice from ED informing her that, pursuant to the CARES Act, tax refund offsets would be suspended no later than April 11, 2020.

65.     Instead, Ms. Cole received a notice dated April 8, 2020, from Fiscal Service stating, "[t]he U.S. Department of the Treasury, Bureau of the Fiscal Service (Fiscal Service), applied all or part of your payment to delinquent debt that you owe. This action is authorized by federal law." Bureau of the Fiscal Service, U.S. Dep't of Treasury, Notice to Kori A. Cole and Matthew L. Theriaque re Tax Offset (Apr. 8, 2020) (attached as Exh. B.)

66.     The notice stated that their entire federal tax refund, $6,859.00, had been applied to this debt and that they would receive nothing.

67.     Under the heading, "Who Do I Owe?," the notice explained, "[w]e applied your payment to debt that you owe to the following agency: U.S. Department of Education."

68.     Ms. Cole has not received a refund of the amount offset from her family's federal tax refund.

69.     Ms. Cole and her family were planning to use their federal tax refund to help pay their monthly living expenses, such as rent, utilities, and food. Because of the impact the COVID-19 pandemic has had on Ms. Cole's husband's business, their family is behind on their rent and other monthly bills.

## CLASS ACTION ALLEGATIONS

70.     Ms. Cole brings this lawsuit on behalf of herself and all other borrowers who are similarly situated. She seeks to represent a class consisting of:

> All borrowers of student loans issued or held by the U.S. Department of Education whose federal tax refunds have been or will be offset to pay such loans between March 27, 2020 and September 30, 2020, and whose tax refunds that were offset during this time period have not been fully returned to the borrowers.

19

71.     The proposed class satisfies the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

72.     The class is so numerous that joinder of all members is impracticable. As discussed *supra* ¶ 48, Treasury data appear to show that Defendants offset more than 11,000 federal tax refunds for ED debt in April 2020 alone. And even those numbers do not include defaulted student loan borrowers whose refunds were improperly offset in the last days of March 2020, who have not filed their federal and state tax returns,[13] or whose federal and state tax returns have not yet been processed.

73.     The exact number and identity of class members can be readily ascertained using the Departments' records.

74.     The nature of relief sought, as well as questions of fact and law, are common to all members of the class.

75.     The Departments' failure to suspend the offset of federal tax refunds and to return illegally seized refunds is identical for the entire class, all of whom have had or will have their federal tax refunds illegally offset after the CARES Act became law. The Departments' challenged actions therefore apply generally to the

---

[13] On March 21, 2020, the Internal Revenue Service announced that the deadline for filing federal tax returns was extended from April 15, 2020, to July 15, 2020, in response to the COVID-19 pandemic. Internal Revenue Service, Filing and Payment Deadline Extended to July 15, 2020 – Updated Statement (Mar. 21, 2020), https://www.irs.gov/newsroom/payment-deadline-extended-to-july-15-2020.

class, making declaratory relief regarding those decisions appropriate for the class as a whole.

76.     The common questions of law and fact also predominate over any questions affecting individual members. The common questions of law and fact include, but are not limited to, whether the Departments' failure to suspend federal tax refund offsets violates the CARES Act, the APA, or the statutes and regulations that authorize federal agencies to offset tax refunds.

77.     Ms. Cole's claims are typical of the claims of other class members, as they arise out of the same course of conduct and legal theories and challenge the Departments' conduct with respect to the class as a whole.

78.     Ms. Cole is capable of and committed to fairly and adequately protecting the interests of the class and has no conflicts with other class members.

79.     Ms. Cole is represented by counsel experienced in higher education law, administrative law, and class action litigation.

80.     A class action is superior for the fair and efficient adjudication of this matter. The Departments have acted in the same unlawful manner with respect to all class members. A legal ruling concerning the unlawfulness of the Departments' actions under the CARES Act, the APA, and the statutes and regulations that authorize federal agencies to offset tax refunds would vindicate the rights of every class member. Finally, a class action would serve the economies of time, effort, and expense while preventing inconsistent results.

# CAUSE OF ACTION

## COUNT ONE
### Secretary DeVos and ED's Violation of the APA, 5 U.S.C. § 706(1) for Failing to Suspend Offsets of Tax Refunds in Violation of the CARES Act

81.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

82.     Under the APA, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

83.     Section 3513(e) of the CARES Act requires ED to suspend, until September 30, 2020, all involuntary collection—including offsetting tax refunds—of defaulted Direct and FFEL loans currently held by ED.

84.     Defendants Secretary DeVos and ED have violated Section 3513(e) of the CARES Act by failing to notify Treasury that the debts of defaulted student loan borrowers could no longer be subject to involuntary collection, in violation of their ongoing legal obligations under Section 3513(e) to suspend all involuntary collection through offset of tax refunds. Defendants Secretary DeVos and ED have also failed to comply with 31 C.F.R. § 285.5(d)(10)(iv)'s requirement to immediately notify Treasury of any change in the status of the legal enforceability of debt.

85.     By failing to notify Treasury that Ms. Cole's debt and the debts of other members of the class cannot be involuntary collected through offsets following the March 27 enactment of the CARES Act, Secretary DeVos and ED have unlawfully withheld or unreasonably delayed their legal obligation to suspend tax refund offsets between March 27, 2020, and September 30, 2020, as required by Section 3513(e) of the CARES Act.

**COUNT TWO**
**Secretary DeVos and ED's Violation of the APA, 5 U.S.C. § 706(2)(A) and (C)
for Offsetting Tax Refunds in Violation of the CARES Act**

86. Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

87. The offset of tax refunds after March 27, 2020, constitutes "final agency action[s] for which there is no other adequate remedy in court." 5 U.S.C. § 704.

88. Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

89. Section 3513(e) of the CARES Act requires ED to suspend, until September 30, 2020, all involuntary collection—including offsetting tax refunds—of defaulted Direct and FFEL loans currently held by ED.

90. Any affirmative steps that Secretary DeVos and ED to collect on the student loans of Ms. Cole and the other members of the class following March 27, 2020 violated Section 3513(e) of the CARES Act and were not in accordance with law.

91. Despite their obligation to suspend involuntary collections on student debt, Secretary DeVos and ED have continued to collect funds from offsetting federal tax refunds to pay down the student loan debts of defaulted borrowers contrary to and in excess of their statutory authority under the CARES Act.

## COUNT THREE
### Secretary Mnuchin and Treasury's Violation of the APA, 5 U.S.C.
### § 706(2)(A) and (C) for Offsetting Tax Refunds in Violation of Federal Laws
### and Regulations (in the alternative to Counts One and Two)

92.    Plaintiff repeats and incorporates by reference each of the foregoing

allegations as if fully set forth herein.

93.    The offset of tax refunds after March 27, 2020, constitutes "final

agency action[s] for which there is no other adequate remedy in court." 5 U.S.C.

§ 704.

94.    Under the APA, a "reviewing court shall . . . hold unlawful and set

aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law," *id.* § 706(2)(A), or "in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

95.    26 U.S.C. § 6402(d) authorizes Treasury to reduce tax refunds only

pursuant to notice from a federal agency that the "named person owes a past-due

legally enforceable debt." The statute does not authorize Treasury to collect debts

that a federal agency has told it are not legally enforceable.

96.    In the alternative to Counts One and Two, if ED complied with its

obligation to notify Treasury that the debts of defaulted student loan borrowers

could no longer be subject to involuntary collection and are therefore not legally

enforceable, then Defendants Secretary Mnuchin and Treasury have acted contrary

to and in excess of their statutory authority under 26 U.S.C. § 6402(d)(1) by failing

to act upon ED's notification and by offsetting federal tax refunds without

authorization from ED.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Kori Cole requests that this Court:

1.     Certify the class defined in paragraph 70 pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the Departments unlawfully withheld their legal obligation to suspend tax refund offsets as required by the CARES Act and/or that their offset of tax refunds between March 27 and September 30, 2020, is not in accordance with law and/or in excess of statutory jurisdiction or authority;

3.     Further declare that the loans held or issued by U.S. Department of Education are not legally enforceable through offsets of tax refunds between March 27 and September 30, 2020;

4.     Further declare that Ms. Cole and the other class members are entitled to the immediate return of their tax refunds.

5.     Further declare that Defendants, their officers, their employees, contractors, and/or their agents must, consistent with the CARES Act, immediately suspend all federal tax refund offsets for Plaintiff Cole and other class members;

6.     Order Defendants Secretary DeVos and ED to notify Treasury that the student loan debts of Ms. Cole and other class members cannot be involuntarily collected by offsetting tax refunds until after September 30, 2020, pursuant to the CARES Act;

7.     Order Defendants to immediately return any offsets from Ms. Cole's and other class members' refunds;

25

8.    Order the Departments to report to the Court when they suspend federal tax refund offsets and when the refunds for class members have been returned as required by the CARES Act, and provide notices thereof to class members;

9.    Award Plaintiff reasonable fees, costs, expenses, and other disbursements for this action; *and*

10.    Grant any other relief this Court deems just and proper.

*/s/ Alice W. Yao*
Daniel A. Zibel (D.C. Bar No. 491377)
Eric Rothschild (D.C. Bar No. 1048877)
Alice W. Yao (D.C. Bar No. 493789)
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
(202) 734-7495
dan@defendstudents.org
eric@defendstudents.org
alice@defendstudents.org

Jeffrey B. Dubner (D.C. Bar No. 1013399)
Sean A. Lev (D.C. Bar No. 449936)
Democracy Forward Foundation
1333 H Street NW
Washington, DC 20005
(202) 448-9090
jdubner@democracyforward.org
slev@democracyforward.org

*Attorneys for Plaintiff and Proposed Class*

Dated:    May 29, 2020